**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

NICHOLAS SDOUCOS,
individually and on behalf of
others similarly situated,

        Plaintiff,

      v.

BANK OF AMERICA, N.A.,

        Defendant.

Case No. 1:25-cv-13845

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND .............................................................................................. 2

       A.     BOA's AutoPay system harms consumers by deducting more than what is owed. 3

       B.     BOA's AutoPay system double-charges Mr. Sdoucos. ............................... 4

       C.     BOA's Cardholder Agreement is misleading and incomplete. ................... 5

III.   ARGUMENT .................................................................................................... 5

       A.     Plaintiff has Article III standing. ............................................................... 5

              1.     BOA caused Mr. Sdoucos's injury. ................................................ 5

              2.     Directing Mr. Sdoucos to request a pre-suit refund does not eliminate
                     Article III standing. ...................................................................... 6

       B.     Mr. Sdoucos stated claims for relief under § 75-1.1 and the NCDCA. .................. 7

              1.     Unfair and deceptive conduct under § 75-1.1. .............................. 8

              2.     Unconscionable means and deceptive misrepresentation under the
                     NCDCA ....................................................................................... 11

       C.     BOA breached the implied covenant of good faith and fair dealing. .................. 13

       D.     Mr. Sdoucos's unjust enrichment claim survives in the alternative. .................... 15

IV.    CONCLUSION ............................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blanchard & Assocs. v. Lupin Pharms., Inc.*,
900 F.3d 917 (7th Cir. 2018) ...................................................................................13

*Bui v. Zuru LLC*,
2024 WL 5680719 (C.D. Cal. Aug. 8, 2024)............................................................7

*Campbell–Ewald Co. v. Gomez*,
577 U.S. 153 (2016)...................................................................................................6

*Carcano v. JBSS, LLC*,
684 S.E.2d 41 (N.C. Ct. App. 2009) .........................................................................9

*Cordaro v. Harrington Bank, FSB*,
260 N.C. App. 26 (2018) .........................................................................................13

*Custer v. Dovenmuehle Mortg., Inc.*,
2024 WL 4528187 (M.D.N.C. Oct. 18, 2024)........................................................12

*Davis Lake Cmty. Ass'n v. Feldmann*,
530 S.E.2d 865 (N.C. Ct. App. 2000) ..................................................................7, 8

*Dean v. Hill*,
615 S.E.2d 699 (2005) ...............................................................................................8

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) .....................................................................................6

*Dysart v. Cummings*,
181 N.C. App. 641 (2007), *aff'd*, 361 N.C. 580 (2007) ..........................................14

*Friday v. United Dominion Realty Tr., Inc.*,
575 S.E.2d 532 (N.C. Ct. App. 2003) .....................................................................12

*Gay v. Peoples Bank*,
2015 WL 3650090 (N.C. Super. June 10, 2015) .....................................................13

*Gay v. Peoples Bank*,
786 S.E.2d 433 (N.C. Ct. App. 2016) .....................................................................13

*Gaynoe v. First Union Corp.*,
571 S.E.2d 24 (N.C. Ct. App. 2002) .......................................................................13

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
  607 F.3d 453 (7th Cir. 2010) ...........................................................................6

*James River Equip., Inc. v. Mecklenburg Utilities, Inc.*,
  179 N.C. App. 414 (2006) .............................................................................15

*Laurens v. Volvo Cars of N. Am., LLC*,
  868 F.3d 622 (7th Cir. 2017) ......................................................................6, 7

*Manos v. Freedom Mortg. Corp.*,
  2022 WL 874181 (4th Cir. Mar. 24, 2022)...................................................13

*In re McClendon*,
  488 B.R. 876 (Bankr. E.D.N.C. 2013) ............................................................9

*Mirabadi v. Select Portfolio Servicing, Inc.*,
  2025 WL 485518 (9th Cir. Feb. 13, 2025) ......................................................6

*Murr v. Capital One, N.A.*,
  28 F. Supp. 3d 575 (E.D. Va. 2014) .............................................................11

*Onnipauper LLC v. Dunston*,
  892 S.E.2d 487 (N.C. Ct. App. 2023) .......................................................8, 12

*Pearce v. Am. Def. Life Ins. Co.*,
  343 S.E.2d 174 (N.C. 1986)...........................................................................10

*S. Atl. Ltd. P'ship v. Riese*,
  284 F.3d 518 (4th Cir. 2002) .....................................................................8, 11

*Salmons, Inc. v. First Citizens Bank & Tr. Co.*,
  2011 WL 4738656 (E.D. Va. Oct. 7, 2011).....................................................11

*In re TD Bank, N.A.*,
  150 F. Supp. 3d 593 (D.S.C. 2015)......................................................10, 11, 14

*Van v. LLR, Inc.*,
  962 F.3d 1160 (9th Cir. 2020) .........................................................................6

*Walker v. Fleetwood Homes of N.C., Inc.*,
  276 S.E.2d 397 (N.C. 2007)..............................................................................8

*Walker v. People's United Bank*,
  305 F. Supp. 3d 365 (D. Conn. 2018).............................................................14

*Williams v. Pennymac Loan Servs., LLC*,
  2025 WL 3443489 (M.D.N.C. Dec. 1, 2025) ..................................................12

*Withers v. BMW of N. Am., LLC*,
 560 F. Supp. 3d 1010 (W.D.N.C. 2021) ...................................................................11

**Statutes**

N.C. Gen. Stat. § 75-1.1 ........................................................................... *passim*

N.C. Gen. Stat. § 75-50, *et seq.* ...................................................................2

N.C. Gen. Stat. § 75-54 ...........................................................................8, 12

N.C. Gen. Stat. § 75-54(7) .........................................................................12

N.C. Gen. Stat. § 75-55 ...........................................................................8, 12

N.C. Gen. Stat. § 75-55(2) .........................................................................12

**Rules**

Fed. R. Civ. P. 8(d)(2) ...............................................................................15

N.C. R. Civ. P. 8(e)(2) ...............................................................................15

## I.  __INTRODUCTION__

This case concerns Bank of America's ("BOA") practice of using its automatic payment ("AutoPay") system to overcharge BOA credit card holders, including Mr. Sdoucos, when they make the responsible decision to pay their credit card balance manually before the designated payment date. Unlike many other large banks, BOA's AutoPay system is programmed to withdraw fixed payments even when the payment amounts exceed the balances owed. BOA does not notify its customers of this practice, so when funds are unexpectedly snatched from customers' accounts, they must scramble to affirmatively request refunds, which take several days (or even weeks) to process. BOA's own customer service agents admit that BOA's AutoPay system routinely misleads and confuses consumers, who are then forced to endure the consequences. Contrary to BOA's assertions, neither BOA's Credit Card Agreement ("Cardholder Agreement") nor any disclosures on its website warn consumers that its system will debit fixed payments in excess of what is owed, and in some cases, even where there is a zero balance. BOA's unfair and deceptive conduct deprived Mr. Sdoucos of over $2,000, leaving him with no recourse other than to navigate a burdensome, time-consuming refund process. BOA's business practices caused tangible harm to Mr. Sdoucos and its other customers who, like him, made a sound financial decision to pay all or part of their credit card bill before the due date.

BOA's meritless arguments seek to shift blame to Mr. Sdoucos—ignoring that BOA, not its consumers, designed the AutoPay system to double-charge consumers who pay early and make it impossible to cancel a transaction that has begun to process. The Motion to Dismiss ("Motion") should be denied for several reasons. **First,** Mr. Sdoucos has Article III standing because loss of access to money is a concrete injury. BOA incorrectly asserts that Mr. Sdoucos's injury was self-inflicted because he did not seek a refund for the early payment (since it was not possible to cancel

the second payment, due to BOA's own system's flaws). *See* Dkt. 18 at 13-14.[1] Not so. BOA omits that its agent advised Mr. Sdoucos not to cancel that payment because doing so could have caused *further* injury. *See* Dkt. 18-9 at 4. The call recordings show that BOA's AutoPay system inflicted the injury suffered by Mr. Sdoucos.

**Second**, Mr. Sdoucos plausibly alleges violations of the North Carolina Unfair and Deceptive Trade Practices Act ("§ 75-1.1") and North Carolina Debt Collection Act ("NCDCA"). N.C. Gen. Stat. § 75-50, *et seq*. BOA's conduct is unfair because BOA is taking advantage of its position of power over consumers to benefit itself financially, and it is deceptive because BOA's disclosures lead reasonable consumers to believe the goal of AutoPay is to pay off their balance— not to pay more than what is owed. BOA fails to identify any language in the Cardholder Agreement (or anywhere else) disclosing that its system would debit a second payment *even though Mr. Sdoucos had paid off the statement balance weeks prior*. This conduct constitutes an unfair or deceptive act or practice under § 75-1.1 and the NCDCA. *Id*. §§ 75-1.1, 75-54, 75-55.

**Third**, Mr. Sdoucos adequately alleges that BOA breached the implied covenant of good faith and fair dealing by unlawfully depriving him of a benefit under the Cardholder Agreement. **Finally**, BOA's arguments fail with respect to the unjust enrichment claim because it is pled in the alternative as allowed at this stage. As such, BOA's Motion should be denied in its entirety.

## II. BACKGROUND

BOA promotes its AutoPay system as a tool to help consumers save money and ease financial strain. In practice, however, that system is programmed to debit funds to which BOA is not entitled, unjustly enriching BOA at its customers' expense. During phone calls with Mr. Sdoucos, BOA's agents admitted that BOA's practices have confused and injured many customers.

---

[1] Pincites to page numbers in ECF documents refer to the page number at the top of the page.

**A. BOA's AutoPay system harms consumers by deducting more than what is owed.**

Like other major credit card issuers, BOA permits its customers to set up AutoPay through its website. Dkt. 1 ("Compl.") ¶¶ 26-27. Unlike other major credit card issuers, BOA's AutoPay system routinely deducts more than the balances its customers owe. *Id.* ¶¶ 30-34. BOA provides two AutoPay payment options: "Total Minimum Payment Due" and "Statement Balance." *Id.* ¶ 28. The Cardholder Agreement confusingly defines "Statement Balance" in reference to a different term, "New Balance Total, as shown on the credit card statement," which is described as the amounts billed to the customer for charges accrued during a billing cycle. *Id.*; Dkt. 18-2 at 7.

Reasonable consumers would understand that selecting the "Statement Balance" AutoPay option would result in an automatic payment of any statement balance actually owed as of the payment date. Compl. ¶¶ 11-12, 30-31, 40. That is how statement balance payments are commonly understood in the credit card industry. *Id.* ¶¶ 31-34. And evidently, this is how BOA's system used to work before it implemented a "new system" that caused many consumers to "still get[] charged that full balance again the second time." Dkt. 18-9 at 4, 5. In reality, and contrary to consumer expectations, BOA designed and implemented an AutoPay system that does not debit the amount actually owed. Instead, the system captures a static, historical snapshot of the account balance on the final day of the prior billing cycle and debits that fixed amount automatically, regardless of the customer's remaining statement balance at the time of withdrawal. Compl. ¶¶ 30, 46.

Yet, BOA does not explain this confusing system to its customers. *Id.* ¶ 30. As a result, BOA has systematically overcharged its customers by debiting amounts greater than what it is owed and, as is the case here, withdrawing funds even when no balance is due at all. Worse, consumers have no ability to halt a transaction once it is already underway. *Id.* ¶ 49. Instead, they must wait for the money to be withdrawn and the payment to post, at which point they must request

and wait for a refund. *Id.* Through this undisclosed and deceptive practice, BOA has unfairly and unlawfully enriched itself at the direct expense of its customers.

### B. BOA's AutoPay system double-charges Mr. Sdoucos.

During the billing cycle between September 14, 2025, and October 13, 2025, Mr. Sdoucos accrued $3,044.88 in charges and remitted one payment of $1,000.00, which left a balance of $2,044.88 as of "the [c]losing [d]ate of the . . . billing cycle." *Id.* ¶ 42; Dkt. 18-2 at 6. On October 21, 2025, twenty days before that billing cycle's payment due date, Mr. Sdoucos paid off the entire remaining balance. Compl. ¶¶ 43-45. As of that date, BOA had no legal or rational basis to debit more funds from Mr. Sdoucos's bank account because he had fully satisfied his obligations.

Mr. Sdoucos logged into his BOA account on November 9, 2025, nineteen days after he satisfied all outstanding obligations to BOA, and noticed a transaction in process that would debit $2,044.88 from his bank account on November 10, 2025. *Id.* ¶ 46. Mr. Sdoucos thought it was a mistake because his online portal reflected a balance of zero. *Id.* ¶ 47. He immediately called BOA to ask why BOA planned to charge his account when he did not owe anything. *Id.* The first agent with whom Mr. Sdoucos spoke explained that BOA implemented a new payment system that was not working properly and was overcharging many customers, including him. *Id.* ¶ 48. She opined that "[h]opefully, [BOA] see[s] that this new bill pay system isn't working and go[es] back to the old bill pay system." Dkt. 18-9 at 5. She also warned that if she tried to "refund the [first payment] that was already submitted, . . . it may mess it up," and advised Mr. Sdoucos to wait until the second payment processed to request a refund. *Id.* at 3, 4.

The second agent with whom Mr. Sdoucos spoke echoed these sentiments. She twice described the overbilling issue as "a great matter" and said that she too received calls from other BOA customers who were overcharged by the AutoPay system. Dkt. 18-10 at 5- 7. BOA's agent then explained that Mr. Sdoucos's only recourse at that point was to request a refund that normally

takes up to ten business days. *Id.* at 8. She added that the timeframe for the refund could be shortened to one to three business days, but only if Mr. Sdoucos requested that it be expedited. *Id.* Even in the best-case scenario, Mr. Sdoucos would be deprived of these funds for multiple days. In the worst case, he could be forced to wait up to ten business days or longer to recover funds to which BOA was not entitled but debited anyway.

### C. BOA's Cardholder Agreement is misleading and incomplete.

BOA's Cardholder Agreement is misleading and does not explain BOA's confusing practices. It inexplicably uses a different term to refer to the statement balance identified on credit card statements. Dkt. 18-2 at 7, 8. With regard to allocation of payments, the Cardholder Agreement states that "[p]ayments are allocated to posted balances." *Id.* at 9. The Cardholder Agreement notes that the "New Balance Total (also referred to as the 'Statement Balance') is the total billed amount as of the Closing Date of a billing cycle, as shown on your monthly statement, plus any adjustments for subsequently returned payments." *Id.* at 7. This language makes clear that the "New Balance Total" *is* dynamic, because it can be "adjust[ed]" for "subsequently returned payments." *Id.* But nowhere discloses that an intervening payment will not reduce or cancel an automatic payment such that it pays the true statement balance owed.

### III. ARGUMENT

#### A. Plaintiff has Article III standing.

##### 1. BOA caused Mr. Sdoucos's injury.

The crux of BOA's half-hearted standing argument hinges on its contention that Mr. Sdoucos's injury was "self-inflicted" because he rejected BOA's offer to refund him the manual payment that he made on October 21, 2025. Dkt. 18 at 13-14. But BOA's retelling ignores that BOA created the need for any refund at all by debiting funds from Mr. Sdoucos's account despite knowing that he fully paid off the balance. It is well established that loss of access to money is a

concrete injury, even when access is eventually restored. *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (standing exists where "unauthorized withdrawals from [plaintiffs'] accounts cause a loss (the time value of money) even when banks later restore the principal"); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (noting the existence of standing because "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money").[2] *Dieffenbach* and *Habitat* foreclose BOA's standing argument.

Worse, BOA fails to mention that Mr. Sdoucos was merely following BOA's advice. BOA's agent warned Mr. Sdoucos against asking for a refund of that October 21, 2025 payment for fear that it would further injure him, stating: "I don't want to refund the [October 21, 2025 payment] that was already submitted, because it may mess it up, and I don't want to mess up anything." Dkt. 18-9 at 4. BOA cannot have it both ways; it cannot advise Mr. Sdoucos not to request a refund because it may further injure him, then blame him for following that very advice.

### 2. Directing Mr. Sdoucos to request a pre-suit refund does not eliminate Article III standing.

Even if the Court overlooked that BOA caused the circumstances necessitating a refund, BOA's offer to let Mr. Sdoucos request a refund of the funds BOA wrongfully took does not eliminate standing. An "unaccepted offer to satisfy a named plaintiff's individual claim is not sufficient to render a case moot when the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated." *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 627 (7th Cir. 2017) (citation modified) (quoting *Campbell–Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)). In *Laurens*, the defendant argued that the plaintiff lacked standing because she did not accept a

---

[2] *See also Mirabadi v. Select Portfolio Servicing, Inc.*, No. 24-1487, 2025 WL 485518, at *2 (9th Cir. Feb. 13, 2025) (holding plaintiff had standing because "[defendant] did not refund [plaintiff] interest on her payments and she therefore lost the time value of her money"); *Van v. LLR, Inc.*, 962 F.3d 1160, 1164-65 (9th Cir. 2020) ("[T]he temporary loss of use of one's money constitutes an injury in fact for purposes of Article III").

pre-suit refund offer. *Id.* at 624. In rejecting that argument, the court held that "unaccepted contract offers are nullities; settlement proposals are contract offers; and therefore unaccepted settlement proposals are nullities." *Id.* at 627. Here, BOA did not even offer to refund Mr. Sdoucos for the second, double-charged payment. BOA merely directed him to call back the next day to request a refund that would then take up to ten business days. Dkt. 18-10 at 8. It is well settled that plaintiffs may opt for trial even in the face of more concrete offers and "could even reject . . . an offer to pay the entire claim before a suit was filed, accompanied by actually producing the sum at the time of tender in an unconditional manner." *Laurens*, 868 F.3d at 628 (citation modified). Here, as in *Laurens*, Mr. Sdoucos has standing because his claims, which materialized as the direct result of BOA's deceptive and unfair business practices, remain unredressed.

BOA bookends its out-of-context argument with an equally out-of-context quotation from a California case, *Bui v. Zuru LLC*, No. 23-cv-06125, 2024 WL 5680719 (C.D. Cal. Aug. 8, 2024). In *Bui*, a product defects case, the plaintiffs made only conclusory allegations that they purchased a product subject to a safety recall and stopped using the product after the recall was announced. *Id.* at *4-5. Here, in contrast, Mr. Sdoucos alleges easily demonstrable economic losses—the loss of over $2,000 that BOA unexpectedly and improperly took, causing an injury that gives rise to standing under binding Seventh Circuit law. And that loss was the unavoidable, direct result of the BOA's deceptive business practices, which were detailed with particularity in the Complaint.

**B. Mr. Sdoucos stated claims for relief under § 75-1.1 and the NCDCA.**

Mr. Sdoucos states claims for relief under § 75-1.1 and the NCDCA because he plausibly alleges that BOA's conduct unfairly abused consumers, deceptively misled them, and was both an unconscionable means and a deceptive representation of collecting on credit card debt. A plaintiff states a claim for relief under § 75-1.1 by showing "(1) an unfair [or deceptive] act (2) in or affecting commerce (3) proximately causing injury." *Davis Lake Cmty. Ass'n v. Feldmann,* 530

S.E.2d 865, 868 (N.C. Ct. App. 2000). To prove a claim under the NCDCA, a plaintiff must establish those three elements, along with three additional showings: "(1) a consumer; (2) that owes a debt; (3) to a debt collector." *Onnipauper LLC v. Dunston*, 892 S.E.2d 487, 491 (N.C. Ct. App. 2023). Under the NCDCA, the "unfair act" under § 75-1.1 includes a debt collector's deceptive representations and unconscionable means of debt collection. *See Davis Lake*, 530 S.E.2d at 868; *see also* N.C. Gen. Stat. §§ 75-54, 75-55.

BOA does not dispute that the conduct alleged is "in or affecting commerce," that Mr. Sdoucos was a consumer who owed a debt, or that BOA was acting as a debt collector when it withdrew money from his account. *Id*. Instead, BOA asserts its conduct was neither unfair nor deceptive under either statute, and that Mr. Sdoucos was not injured. Dkt. 18 at 15-17. BOA's arguments fail for reasons explained in Part A and below.

### 1. Unfair and deceptive conduct under § 75-1.1.

"[T]he obligations imposed by [§ 75-1.1] create a cause of action broader than traditional common law actions." *S. Atl. Ltd. P'ship v. Riese*, 284 F.3d 518, 537 (4th Cir. 2002) (citation modified). Conduct is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and it is deceptive if it has the "tendency to deceive the average consumer." *Dean v. Hill*, 615 S.E.2d 699, 702 (2005) (citation modified); *Walker v. Fleetwood Homes of N.C., Inc.*, 276 S.E.2d 397, 403 (N.C. 2007) (a practice is deceptive if it "has the capacity . . . to deceive").

Mr. Sdoucos alleges that BOA misleads consumers and improperly overcharges them because its AutoPay system is programmed to unexpectedly withdraw payments exceeding what is owed from their bank accounts. Compl. ¶¶ 28-30, 35. BOA's confusing Cardholder Agreement and website disclosures do not put a reasonable consumer on notice of this practice; BOA tells consumers that selecting the "Statement Balance" option "will pay your statement in full," an

outcome that Mr. Sdoucos had already accomplished before BOA debited a second payment from his account. *Id.* ¶¶ 28-30, 35, 43, 45-46. And after BOA debits that payment, it forces consumers in Mr. Sdoucos's position to request a refund and then wait for up to multiple weeks for it to arrive. *Id.* ¶ 49; *see* Dkt. 18-9 at 4. BOA's conduct violates both § 75-1.1 and the NCDCA.

*Unfair Conduct*. These allegations satisfy the unfairness standard under § 75-1.1. It is axiomatic that knowingly overbilling a consumer is contrary to public policy and unethical. Unjustifiably depriving consumers of money is also "substantially injurious" because of its wide-ranging, long-lasting negative economic effects felt in other facets of consumers' lives. Further, allegations that BOA leveraged its power by knowingly overcharging consumers sufficiently demonstrate that BOA "engag[es] in conduct which amounts to an inequitable assertion of its power or position." *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 50 (N.C. Ct. App. 2009). As the credit card issuer, BOA is in a position of power over its customers; and it exercised that power to overcharge them. *See, e.g.*, *In re McClendon*, 488 B.R. 876, 894-95 (Bankr. E.D.N.C. 2013) (finding unfair conduct where creditor wrongfully demanded payment that should not have been due). Consumers were not in a position to stop the later transactions once they had already commenced; although BOA could have designed a system that allowed it to do that, it chose not to. And while BOA could have designed a system that had controls in place to prevent overbilling, it also chose not to do that. Instead, it continued to knowingly accept wrongful payment.

*Deceptive Conduct.* The Complaint also pleads deceptive conduct. BOA told Mr. Sdoucos that selecting the "Statement Balance" AutoPay option "will pay your statement in full." Compl. ¶¶ 29, 30, 40, 69. In reality, BOA took a fixed amount regardless of his actual balance. BOA's agents admitted that many other consumers were also deceived and, even if Mr. Sdoucos requested a refund, BOA would retain these funds for multiple days, if not multiple weeks. Dkt. 18-9 at 4;

*see* Compl. ¶ 49. These allegations show that BOA's conduct deceives consumers into believing that the "Statement Balance" option would do what its title suggests: pay the statement balance due. In reality, BOA knowingly took more than it was owed. BOA's deception is further illustrated by the fact that, when it is in BOA's financial interest, BOA *can and does* recalculate the statement balance "[i]f a payment is credited to [the] account but is returned unpaid." Dkt. 18-2 at 8*; see In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 638 (D.S.C. 2015) (denying motion to dismiss § 75-1.1 claims where agreement "could cause the reader to be misled").

Under either standard, BOA's conduct violates § 75-1.1. And BOA stands alone in the banking industry with this confusing system, as Capital One Bank, Chase Bank, Wells Fargo Bank, and CitiBank all use AutoPay systems that accurately calculate balances owed. Compl. ¶¶ 31-34. Absent intimate knowledge of BOA's software, BOA's customers cannot reasonably anticipate the possibility of an overcharge resulting from making a manual payment. BOA further compounds its unfair and deceptive conduct by using different terms ("New Balance Total" and "Statement Balance") in its Cardholder Agreement to refer to the same thing. Dkt. 18-2 at 7, 8. Consumers should not be required to memorize and track multiple different internal naming conventions simply to ensure their credit card bill is paid accurately (and only once).

BOA argues that it merely "did precisely what it told [him] it would" and therefore its conduct "cannot be unfair or deceptive as a matter of law." Dkt. 18 at 16. BOA is wrong. BOA does not, and cannot, identify any clear disclosure that its AutoPay system will debit a payment regardless of the actual balance owed on the payment date. *See* Compl. ¶¶ 29-30; *see generally* Dkt. 18-2. Even if its Cardholder Agreement contains technically true statements, it is still misleading because it is incomplete. *See Pearce v. Am. Def. Life Ins. Co.*, 343 S.E.2d 174, 180 (N.C. 1986) (even truthful statements can be actionable if they have the tendency to deceive)*; see*

*also In re TD Bank*, 150 F. Supp. 3d at 638 (same).

This case is similar to *Murr v. Capital One, N.A.*, 28 F. Supp. 3d 575 (E.D. Va. 2014), in which a bank's promotional offer had "a tendency and capacity to convey misleading impressions to consumers even though interpretations that would not be misleading are also possible." *Id.* at 594 (citation modified). Similar, too, is *In re TD Bank*, where the court rejected a bank's argument that its account agreement authorized its overdraft fee practices alleged to be unfair and deceptive, explaining that "[t]here is at least a plausible reading of certain portions of the [account agreement] that could cause the reader to be misled about the mechanics of the overdraft policy." 150 F. Supp. 3d at 637-38. The same is true here: BOA's statements about its AutoPay feature, which disclose only that the selection causes a statement balance to be paid off but does not explain that BOA will double bill if an intervening payment is made, has a tendency and capacity to mislead.

BOA's conduct also amounts to a deceptive omission under § 75-1.1. A defendant's omission can constitute a deceptive act where "inequality of . . . knowledge" gives rise to a duty to speak. *Salmons, Inc. v. First Citizens Bank & Tr. Co.*, No. 10cv72, 2011 WL 4738656, at *5 (E.D. Va. Oct. 7, 2011) (applying North Carolina law). Here, BOA—not Mr. Sdoucos—had sole knowledge of its billing practices, and Mr. Sdoucos had no way to prevent the overbilling. Indeed, BOA *concedes* that the most it could offer is a refund after the fact—even BOA had no way to stop the second charge from going through. *See* Dkt. 18-9 at 4; *Riese*, 284 F.3d at 537-38 (conduct was unfair where defendant withheld information, resulting in harm); *Withers v. BMW of N. Am., LLC*, 560 F. Supp. 3d 1010, 1020 (W.D.N.C. 2021) (duty to speak can arise through active concealment of facts).

### 2. Unconscionable means and deceptive misrepresentation under the NCDCA.

The NCDCA mirrors the elements of § 75-1.1, where the use of unconscionable means or deceptive representation in connection with the collection of a debt can constitute the unfair act.

N.C. Gen. Stat. §§ 75-54 (defining deceptive representation), 75-55 (defining unconscionable means). Under § 75-55, the use of unconscionable means to collect a debt "include[s], but [is] not limited to" collecting any "charge . . . incidental to the principal debt unless [the debt collector is] legally entitled to such . . . charge." *Id.* § 75-55(2).

Here, Mr. Sdoucos alleges that BOA took a second payment even though his balance was paid in full. Compl. ¶ 46. And Mr. Sdoucos further alleges that BOA was not legally entitled to this payment, as he had already paid off his statement balance and did not owe BOA any money. *Id.* ¶¶ 43, 45. Nothing in the Cardholder Agreement authorized this additional withdrawal. Since it cannot be reasonably disputed that a credit card payment is "incidental" to the debt, these facts plausibly allege that BOA collected a "charge" "incidental to the principal debt" without legal entitlement. N.C. Gen. Stat. § 75-55(2); *see, e.g.*, *Williams v. Pennymac Loan Servs., LLC*, No. 25-cv-00276, 2025 WL 3443489, at *5 (M.D.N.C. Dec. 1, 2025) (rejecting defendant's position that it was legally entitled to a fee when it failed to "identify any legal provision expressly permitting such fees"). Mr. Sdoucos has also plausibly alleged deceptive misrepresentation under § 75-54 generally and § 75-54(7) for the reasons discussed above. *See Onnipauper*, 892 S.E.2d at 495 (violation of § 75-54 requires showing "that the act complained of possessed the tendency or capacity to mislead, or created the likelihood of deception" (citation modified)).

BOA also argues that the NCDCA is an exclusive remedy. Dkt. 18 at 14-15 n.1. This is not settled law, as courts applying North Carolina law have ruled that a plaintiff can pursue claims under both statutes simultaneously. *See, e.g.*, *Friday v. United Dominion Realty Tr., Inc.*, 575 S.E.2d 532, 536 (N.C. Ct. App. 2003) ("If a conclusion of law is made that a debt collector violates a provision of [the NCDCA], then that violation can be also a violation of [§ 75-1.1]." (citation modified)); *Custer v. Dovenmuehle Mortg., Inc.*, 24-CV-306, 2024 WL 4528187, at *4-5

(M.D.N.C. Oct. 18, 2024) (allowing both claims to proceed past motion to dismiss). Second, even if the NCDCA were an exclusive remedy and Mr. Sdoucos could not recover under both statutes, he is entitled at the pleading stage to pursue claims under both statutes. *See, e.g.*, *Blanchard & Assocs. v. Lupin Pharms., Inc.*, 900 F.3d 917, 921 (7th Cir. 2018) (ruling that an inconsistency between two mutually exclusive claims "doesn't matter at the pleading stage; a complaint may plead these two . . . theories in the alternative").

Finally, BOA cites several cases, but all are distinguishable because, unlike here, the challenged conduct conformed with an express disclosure. *See, e.g.*, *Gay v. Peoples Bank*, No. 13 CVS 383, 2015 WL 3650090, at *6, *11 (N.C. Super. June 10, 2015) (noting bank expressly disclosed that a debit transaction "will constitute a simultaneous withdrawal from . . . your checking account . . . *even though the transaction may not actually be posted to that account*" (emphasis added)), *aff'd*, 786 S.E.2d 433 (N.C. Ct. App. 2016); *Gaynoe v. First Union Corp.*, 571 S.E.2d 24, 26-27 (N.C. Ct. App. 2002) (bank increased APR after providing notice and contract authorized bank to "change any part of" the contract if it gave advance written notice); *Manos v. Freedom Mortg. Corp.*, No. 21-1324, 2022 WL 874181, at *2 (4th Cir. Mar. 24, 2022) (defendant's policy of postdating payments made after 11:00 pm conformed with banner on its website "notifying customers that payments made after 11:00 p.m. would be posted the following day").

## C. BOA breached the implied covenant of good faith and fair dealing.

BOA breached its implied covenant of good faith and fair dealing by depriving Mr. Sdoucos of his right to receive the benefit of the Cardholder Agreement: the ability to "pay your statement in full" and have that payment "allocated to posted balances." Compl. ¶¶ 95-96. Under North Carolina law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38 (2018) (citation modified).

And "[w]here a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based on upon good faith and fair play." *Dysart v. Cummings*, 181 N.C. App. 641, 647 (2007) (citation modified), *aff'd*, 361 N.C. 580 (2007). Here, BOA abused its discretion under the Cardholder Agreement to debit more than the "statement balance" after the statement balance had already been paid in full, resulting in injury to Mr. Sdoucos. Compl. ¶¶ 30, 43, 45-46. Rather than allocating the payment to a "posted balance" as promised, BOA allocated an extra payment to itself. *Id.* ¶ 97.

BOA argues that "the Agreement clearly states that for the purposes of automatic payments, 'Statement Balance' would be a fixed amount." Dkt. 18 at 18. It doesn't. The quoted sentence reads in full: "New Balance Total (also referred to as the 'Statement Balance') is the total billed amount as of the Closing Date of a billing cycle, as shown on your monthly statement, *plus any adjustments for subsequently returned payments*." Dkt. 18-2 at 7 (emphasis added). This sentence explains how the balance is calculated and where it appears. It does not state that the payment amount is "fixed"; it explicitly states that the balance is fluid and subject to subsequent adjustments.

BOA also breached its implied covenant of good faith and fair dealing because it did not "exercise its contractual discretion reasonably," and, at a minimum, whether it did so is a fact question not appropriate for resolution at this stage. *See In re TD* Bank, 150 F. Supp. 3d at 626-27 (citation modified) (denying motion to dismiss breach of covenant claim where plaintiffs alleged "the manner in which" a bank imposed policy was "in excess of the express terms"); *see also, e.g.*, *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 378 (D. Conn. 2018) (plaintiff stated claim for breach of covenant by alleging bank failed to "provide an accurate description of its overall program for [certain] transactions"). The Cardholder Agreement gives BOA "the right to refuse

any payment if that payment will create, or if the account already has, a credit balance," confirming that BOA can prevent overpayments but chooses not to—thereby abusing its discretion to enrich itself. Dkt. 18-2 at 8. BOA's unfair and unreasonable practice is not inadvertent or isolated. Rather, it is systemic and, according to BOA's agents, BOA has knowingly taken funds to which it was not entitled from numerous customers, depriving them and Mr. Sdoucos of the benefit of their agreements with BOA to pay the statement balance once and have it allocated to posted balances.

### D. Mr. Sdoucos's unjust enrichment claim survives in the alternative.

BOA only argues that the existence of a contract precludes an unjust enrichment claim, but BOA is wrong again. North Carolina law and the Federal Rules allow parties to plead quasi-contractual claims in the alternative, even where there is an express contract. "It is well-established that liberal pleading rules permit pleading in the alternative, and that theories may be pursued in the complaint even if plaintiff may not ultimately be able to prevail on both." *James River Equip., Inc. v. Mecklenburg Utilities, Inc.*, 179 N.C. App. 414, 419 (2006) (citation modified)*; see also* Fed. R. Civ. P. 8(d)(2). When two or more statements are made in the alternative and one of them would be sufficient if made independently, "the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." N.C. R. Civ. P. 8(e)(2). Additionally, a party may "state as many separate claims . . . as he has regardless of consistency and whether based on legal or on equitable grounds or on both." *Id.*

## IV. <u>CONCLUSION</u>

For these reasons, Mr. Sdoucos requests that the Court deny BOA's Motion. Should the Court be inclined to grant the motion in whole or in part, Mr. Sdoucos requests that it be without prejudice to amend.

Dated: February 11, 2026

Respectfully submitted,

/s/ Katherine M. Aizpuru
Katherine M. Aizpuru (*pro hac vice*)
Hassan A. Zavareei
Travis Stoller (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: 202-973-0900
E-mail: hzavareei@tzlegal.com
E-mail: kaizpuru@tzlegal.com
E-mail: tstoller@tzlegal.com

F. Peter Silva, (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 202-973-0900
E-mail: psilva@tzlegal.com

Shaun Spector, Esq. (*pro hac vice*)
**The Law Offices of Shaun Spector, PLLC**
2332 Galiano Street, Second Floor
Coral Gables, Florida 33134
Telephone: (786) 571-7110
Email: Shaun@ShaunSpectorLaw.com

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2026, a copy of the foregoing was served by ECF to all counsel of record.

/s/ *Katherine M. Aizpuru*
Katherine M. Aizpuru