IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NICHOLAS SDOUCOS, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 1:25-CV-13845 |

**DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.      SDOUCOS LACKS STANDING BECAUSE HIS ALLEGED INJURY IS SELF-INFLICTED .......................................................................................... 1

    II.     THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM. ...................................................... 3

          A.      The Complaint Does Not Plead a Violation of NCUDTPA or NCDCA .......................................................................................................... 3

          B.      Sdoucos Does Not Plead an Implied Covenant Claim. ............................ 6

          C.      The Credit Agreement Requires Dismissal of the Unjust Enrichment Claim. .................................................................................... 7

CONCLUSION .............................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cooper v. Endurance Dealer Servs., LLC*,
   2025 WL 3281681 (N.D. Ill. Nov. 25, 2025) ................................................................. 8

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018) ................................................................................ 2

*Guerrero v. Bank of Am. N.A.*,
   2023 WL 2712484 (W.D.N.C. Mar. 30, 2023) ................................................... 8

*Guhne v. Ceridian HCM, Inc.*,
   2021 WL 1165328 (M.D.N.C. Mar. 26, 2021) ................................................... 7

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
   607 F.3d 453 (7th Cir. 2010) ................................................................................ 2

*Indep. Warehouse v. Kim*,
   2017 WL 4322399 (E.D.N.C. Sept. 28, 2017) ................................................... 8

*Laurens v. Volvo Cars of North America, LLC*,
   868 F.3d 622 (7th Cir. 2017) ................................................................................ 3

*Mirabadi v. Select Portfolio Servicing, Inc.*,
   2025 WL 485518 (9th Cir. Feb. 13, 2025) ......................................................... 2

*Murr v. Capital One, N.A.*,
   28 F. Supp. 3d 575 (E.D. Va. 2014) ................................................................... 5

*Parvati Corp. v. City of Oak Forest*,
   630 F.3d 512 (7th Cir. 2010) ................................................................................ 2

*Pennsylvania v. New Jersey*,
   426 U.S. 660 (1976) ............................................................................................. 3

*Solum v. Certainteed Corp.*,
   147 F. Supp. 3d 404 (E.D.N.C. 2015) ................................................................ 4

*In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*,
   50 F. Supp. 3d 593 (S.D.C. 2015) ...................................................................... 5

*U.S. Bank Nat'l Ass'n v. Sofield*,
   2017 WL 2569740 (W.D.N.C. June 13, 2017) ................................................... 7

*Van v. LLR, Inc.*,
   962 F.3d 1160 (9th Cir. 2020) ............................................................................. 2

*Williams v. Pennymac Loan Services, LLC*,
   2025 WL 3443489 (M.D.N.C. Dec. 1, 2025) ..................................................... 6

*Wrightsville Beach Prop., LLC v. Attwa*,
   2023 WL 8100189 (E.D.N.C. Nov. 21, 2023) ................................................. 7, 8

## PRELIMINARY STATEMENT

Plaintiff Nicholas Sdoucos's Opposition to Bank of America's Motion to Dismiss confirms that dismissal is warranted here. First, he concedes that he rejected the Bank's efforts to prevent his supposed injury before it even occurred, purposely choosing to create the very credit balance that he alleges gives rise to his claims. Second, he acknowledges that the Bank processed his payment exactly as the Bank said it would, both in the disclosures it made to him when he instructed the Bank to automatically pay his Statement Balance and in the applicable credit card agreement. While he wishes the Bank's policies were different, that without more is not enough to state a claim. His claims should therefore each be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), without leave to amend, because these are fundamental problems that cannot be cured, not mere pleading issues.

## ARGUMENT

### I. SDOUCOS LACKS STANDING BECAUSE HIS ALLEGED INJURY IS SELF-INFLICTED.

Sdoucos argues that he has standing because the loss of use of funds can constitute an injury. (Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. 21] ("Opp.") at 6.) This may be true, but it is beside the point. Sdoucos lacks standing because he caused his loss of use of the funds at issue. Sdoucos concedes in his Opposition that the Bank offered to return his October 21, 2025 manual payment while his scheduled automatic payment was still processing on November 9, 2025— two days before Sdoucos filed this lawsuit. (*Id.* at 4–5.) Accepting this refund would have prevented the very credit balance and the associated loss of use of funds that he claims is his injury, but it also would have prevented him from filing his 109-paragraph class-action

complaint two days later. (*Id.*)[1] The Bank also offered Sdoucos an expedited refund after the automatic payment finished processing (which would be when the Bank first had access to the funds). Sdoucos did not take that option either. To the extent Sdoucos has been harmed, it is because he voluntarily chose to make a manual payment without cancelling his already scheduled automatic payment and then rejected the two solutions that the Bank offered to fix the problem he created. This self-inflicted injury does not give rise to standing. (*See* Br. at 9 (citing *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 517–18 (7th Cir. 2010)).)

Sdoucos cites several cases for the proposition that the loss of use of funds can constitute injury, but none involve a situation in which the plaintiff was offered—and rejected—a cure that would have prevented the loss of use from occurring in the first place. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 827 (7th Cir. 2018) (observing that, after fraudulent charges were made to plaintiffs' credit cards after a data breach, the plaintiffs' loss of "use of their funds while waiting for banks to reverse unauthorized charges to their accounts" could constitute injury); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 455, 457 (7th Cir. 2010) (holding that loss of use of funds from payment made to post $10,000 injunction bond confers standing to challenge the bond); *Mirabadi v. Select Portfolio Servicing, Inc.*, 2025 WL 485518, at *1–2 (9th Cir. Feb. 13, 2025) (finding potential injury where allegedly illegally charged fees were returned after "several months" but plaintiff did not receive interest); *Van v. LLR, Inc.*, 962 F.3d 1160, 1161, 1164 (9th Cir. 2020) (finding injury where plaintiff received refund of improperly charged tax after the lawsuit was filed, but no interest to account for loss of use).

---

[1] Sdoucos alleges that the October 21, 2025 payment was intended to satisfy his credit card balance. (Compl. ¶ 43.) Thus, the time between when Sdoucos made the manual payment and when the refund would have occurred (if accepted by Sdoucos) cannot be an injury.

2

Sdoucos relies heavily on *Laurens v. Volvo Cars of North America, LLC*, 868 F.3d 622 (7th Cir. 2017) (cited in Opp. at 6–7), in which plaintiffs claim they paid extra money for a hybrid version of a car that did not deliver the promised features. *Id.* at 624. Several months after the purchase, Volvo sent a letter offering a full refund if the car was returned. *Id.* The plaintiff rejected the offer and instead sued. *Id.* The court treated the refund offer as an unaccepted offer to settle an injury that already had occurred; it thus did not affect plaintiff's standing. *Id.* at 627. Here, in contrast, the Bank's November 9, 2025 offer to return Sdoucos's manual payment, before his automatic payment processed the following day, would have prevented any credit balance, and thus any alleged injury, from occurring in the first place.

Sdoucos argues his behavior was justified by a customer service representative's out-of-context statement that she was concerned that refunding the manual payment "may mess it up, and I don't want to mess up anything." (Opp. at 6.) But it was Sdoucos's decision to make a double payment (contrary to his rhetoric that the Bank "double-charged" him) that caused the problem described in his Complaint. The consequences of his own actions were only compounded by his refusal to accept the help the Bank offered. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) ("No [plaintiff] can be heard to complain about damage inflicted by its own hand.") (cited in Br. at 9). The Complaint should therefore be dismissed in its entirety under Rule 12(b)(1).

## II. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM.

### A. The Complaint Does Not Plead a Violation of NCUDTPA or NCDCA.

In his Opposition, Sdoucos criticizes the Bank's automatic payment system for "captur[ing] a static, historical snapshot of the account balance on the final day of the prior billing cycle and debit[ing] that fixed amount automatically, regardless of the customer's

3

remaining statement balance at the time of the withdrawal." (Opp. at 3.) But this is precisely what the Bank told customers it would do both (i) when they selected their automatic payment option through their online accounts and were informed that "'Statement Balance' means the 'New Balance Total, *as shown on the credit card statement*,'" (Br. at 5 (quoting Compl. ¶ 28)) and (ii) in the Agreement, which states that the "New Balance Total (also referred to as the 'Statement Balance') is the total billed amount as of the Closing Date of a billing cycle, as shown on your monthly statement" (Br. at 4). These disclosures leave no ambiguity about the amount that would be paid if "Statement Balance" was the selected payment option. This requires dismissal of both Sdoucos's NCUDTPA and NCDCA claims. (Br. at 11–13.)

While the Complaint alleges (incorrectly) that the Agreement did not define "New Balance Total" (Compl. ¶ 29), Sdoucos now argues that the Agreement's definition of New Balance Total as the "total billed amount as of the Closing Date of a billing cycle, as shown on your monthly statement, *plus any adjustments for subsequently returned payments*" suggests that "Statement Balance" is a dynamic amount that would change to reflect all post-billing cycle activity. (Opp. at 5.) But this language specifically referring to "adjustments for subsequently returned payments" suggests nothing of the sort. The Agreement does not identify any other adjustments for post-billing cycle activity. Thus, a customer could not have reasonably understood this definition to mean that the amount shown on the monthly statement would be adjusted to reflect post-billing cycle close payments. (Br. at 13 (citing *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411–12 (E.D.N.C. 2015).)[2]

---

[2] For the same reason, the Opposition's reference to the Agreement's disclosure that "[i]f a payment is credited to your account but is returned unpaid in a later billing cycle, we will recalculate the Total Minimum Payment Due, the New Balance Total, and the Interest Saving Balance for that billing cycle in which the payment was originally credited" (Opp. at 10) does not reasonably suggest that Statement Balance will include post-billing cycle close payments.

The Agreement's clear language defining "Statement Balance" as the amount shown on the monthly statement distinguishes Sdoucos's claim from *In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, 150 F. Supp. 3d 593 (S.D.C. 2015) and *Murr v. Capital One Bank (USA), N.A.*, 28 F. Supp. 3d 575 (E.D. Va. 2014). In *TD Bank*, the relevant agreement was ambiguous about whether pending debits (debits being processed for which funds had not left the customer's checking account) would be considered in determining whether an overdraft had occurred. *Id.* at 622, 624. The source of this ambiguity was that the relevant agreement was inconsistent in using the terms "available balance" and "negative available balance," which were defined as including pending debits, and the terms "balance" or "negative balance," which could reasonably be understood to refer to the customer's actual balance (i.e., without considering pending debits). *Id.* at 624 ("At the very least, there are outstanding factual questions on when TD Bank actually 'advanced funds,' whether imprecise use of the terms 'negative balance' and 'negative available balance' created a duty on [TD] Bank's part to only assess overdraft fees when the 'actual balance' was negative . . . ."). In contrast here, the Agreement consistently defines "Statement Balance" as the amount shown on Sdoucos's monthly statement.

In *Murr v. Capital One Bank (USA), N.A.*, 28 F. Supp. 3d 575 (E.D. Va. 2014), the court denied summary judgment of a claim under the Arizona Consumer Fraud Act ("ACFA") and for common law fraud—because plaintiff presented evidence that defendant induced a customer to use access checks (which loaned money as a cash advance) while concealing that doing so would result in the customer losing the interest grace period on new purchases. *Id.* at 580, 594. No such concealment is alleged to have occurred here (*see supra*). Nor could it be because the Bank's conduct was plainly disclosed. Nothing in the Complaint reflects an effort by the Bank to hide the scheduled automatic payment (to the contrary, the Complaint concedes the scheduled

5

payment was shown to Sdoucos on the web portal (Compl. ¶ 46)) or to keep the funds for itself (the Bank offered to return the manual payment to Sdoucos before the scheduled automatic payment posted and credited the balance to Sdoucos's account). These facts distinguish this case from *Williams v. Pennymac Loan Services, LLC*, 2025 WL 3443489 (M.D.N.C. Dec. 1, 2025), where defendant allegedly charged plaintiffs unauthorized fees that went to defendant. *Id.* at *5.

Sdoucos also takes issue with the fact that when he called on Sunday, November 9, 2025, it was not possible to cancel the automatic payment he had previously scheduled because it was already being processed. (Opp. at 11.) Sdoucos's Opposition ignores that the Bank disclosed, and Sdoucos agreed, in the Online Banking Agreement that scheduled payments could only be cancelled before "5 p.m. ET on the third bank business day prior to the scheduled delivery date" and that "[o]nce a payment has begun processing, it cannot be canceled." (Br. at 6.) Given this disclosure and agreement, there was no "inequality of knowledge" concerning the Bank's payment processing practices or alleged additional information that the Bank was required to disclose. (Opp. at 11.)[3]

**B.      Sdoucos Does Not Plead an Implied Covenant Claim.**

Sdoucos seeks to use the implied covenant of good faith and fair dealing to add an obligation to his credit card agreement that the Bank continuously update scheduled automatic payments to reflect post-statement manual payments. But North Carolina law prohibits plaintiffs from using the implied covenant of good faith and fair dealing to read nonexistent terms into a contract. (Br. at 13–14 (collecting cases).)

Sdoucos's Opposition seeks to circumvent North Carolina's clear prohibition on implying

---

[3] Sdoucos asserts that he can pursue both NCUDTPA and NCDCA claims simultaneously at this stage. (Opp. at 12–13.) Even if correct, dismissal is required here because he fails to plead a claim under either statute.

new terms by invoking the general principle that the implied covenant requires parties to exercise contractual discretion reasonably and in good faith. (Opp. at 14.) This principle does not apply here because Sdoucos fails to identify any discretion the Agreement gives to the Bank related to automatic payments. The Agreement clearly defines "Statement Balance" as "the total billed amount as of the Closing Date of a billing cycle, *as shown on your monthly statement*, plus any adjustments for subsequently returned payments." (Ex. A at 7 (emphasis added).) It does not leave any discretion for the Bank to apply a different definition or to make adjustments other than for "subsequently returned payments." Sdoucos concedes the Bank processed an automatic payment for the total billed amount as shown on the monthly statement. The Bank thus followed Sdoucos's instructions. There is no basis for the Court to rewrite the Agreement.

**C.**      **The Credit Agreement Requires Dismissal of the Unjust Enrichment Claim.**

Sdoucos argues that his unjust enrichment claim should not be dismissed because both North Carolina law and the federal rules permit plaintiffs to plead in the alternative. (Opp. at 15.) This principle does not apply here because "while an unjust enrichment claim may be pleaded in the alternative, such a claim should ordinarily be dismissed where the existence of a governing contract is undisputed." *Guhne v. Ceridian HCM, Inc.*, 2021 WL 1165328, at *12 (M.D.N.C. Mar. 26, 2021); *see also, e.g.*, *U.S. Bank Nat'l Ass'n v. Sofield*, 2017 WL 2569740, at *4 (W.D.N.C. June 13, 2017) ("[A]lthough a plaintiff may allege alternative theories of recovery, the ability of a party to raise an unjust enrichment claim in the alternative to a breach of contract claim rests on the absence of evidence establishing the existence of an express contract." (internal alterations and citation omitted)); *Wrightsville Beach Prop., LLC v. Attwa*, 2023 WL 8100189, at *10 (E.D.N.C. Nov. 21, 2023) (dismissing unjust enrichment claim where "there is no such question of contract validity arising from the facts alleged in the instant complaint") (collecting cases); *Cooper v. Endurance Dealer Servs., LLC*, 2025 WL 3281681, at

7

*18 (N.D. Ill. Nov. 25, 2025) (Gettleman, J.) ("[W]hen, as here, the existence of a contract between the parties is undisputed, an unjust enrichment claim will seldom survive a motion to dismiss." (internal marks omitted)). Sdoucos himself affirmatively alleges the existence of a governing contract here, as to which there is no dispute. (*See* Compl. ¶¶ 23, 24, 28, 39 (alleging existence of Agreement); *id.* ¶ 104 (incorporating allegations of governing contract into unjust enrichment claim).) Sdoucos's unjust enrichment claim must therefore be dismissed. *See Wrightsville Beach Prop., LLC*, 2023 WL 8100189, at *9 ("[A]n action for unjust enrichment . . . may not be brought in the face of an express contract."). This is simply not a case where the unjust enrichment claim is brought "in the alternative" to avoid an inequitable result if the Court finds there is no express contract between the parties. *See, e.g.*, *Indep. Warehouse v. Kim*, 2017 WL 4322399, at *2 (E.D.N.C. Sept. 28, 2017) (allowing unjust enrichment claim to proceed in the alternative "[w]hen the validity of the contract [was] in question"); *Guerrero v. Bank of Am. N.A.*, 2023 WL 2712484, at *5 (W.D.N.C. Mar. 30, 2023) ("[W]hen the applicability or enforceability of the contract is in dispute, a plaintiff may assert alternative claims for unjust enrichment and breach of contract." (internal marks omitted)).

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Opening Brief, the Court should dismiss without leave to amend, Sdoucos's claims (i) under Rule 12(b)(1) for lack of standing because Sdoucos's injuries are self-inflicted or (ii) alternatively, under Rule 12(b)(6) for failure to state a claim.

Dated: March 4, 2026                                Respectfully submitted,


                                                By: */s/ Elizabeth L. McKeen*

                                                Elizabeth L. McKeen (CA Bar No. 216690)
                                                Danielle N. Morris (CA Bar No. 246295)
                                                O'MELVENY & MYERS LLP
                                                610 Newport Center Drive, 17th Floor
                                                Newport Beach, California 92660-6429
                                                Telephone:  +1 949 823 6900
                                                Facsimile:   +1 949 823 6994
                                                emckeen@omm.com
                                                dmorris@omm.com

                                                Attorneys for Defendant Bank of America, N.A.

9

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, a copy of the foregoing document was electronically filed with the Clerk of Court through the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses on file with the Court.

By: <u>*/s/ Elizabeth L. McKeen*</u>
Elizabeth L. McKeen