# EXHIBIT 1

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS SDOUCOS, individually and on behalf of others similarly situated, | ) Case No. 25 C 13845 |
| Plaintiff, | ) |
| vs. | ) |
| BANK OF AMERICA, N.A., | ) Chicago, Illinois |
| | ) September 15, 2026 |
| Defendant. | ) 10:02 A.M. |

TRANSCRIPT OF PROCEEDINGS - Motion
BEFORE THE HONORABLE MARIA VALDEZ, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: TYCO & ZAVAREEI LLP
BY: MR. FERNANDO PETER SILVA, II
2000 Pennsylvania Ave, NW, Suite 1010
Washington, DC 20006

For the Defendant: O'MELVENY & MYERS
BY: MS. DANIELLE MORRIS
610 Newport Center Drive
Newport Beach, California 92660

** NOTE: FAILURE TO SPEAK DIRECTLY INTO MICROPHONE RESULTS IN INAUDIBLE PROCEEDINGS AS NOTED **

Court Reporter: PAMELA S. WARREN, CSR, RPR
Official Court Reporter - Retired
23869 N. High Ridge Drive
Lake Zurich, Illinois 60047
312.823.0001
pswcsr@gmail.com

* * * * *

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings held in open court:)

THE CLERK: 25 C 13845, Sdoucos versus Bank of America, N.A.

THE COURT: Let's get your appearances and come to the podium, please.

MR. SILVA: Good morning, your Honor. Peter Silva on behalf of the plaintiff.

MS. MORRIS: Good morning, your Honor. Danielle Morris of O'Melveny & Myers on behalf of defendant Bank of America.

THE COURT: All right. We are here for the defendant's motion to bifurcate discovery. I have reviewed the motion, and I have reviewed plaintiff's opposition to the motion.

Movant, you want to be heard?

MS. MORRIS: Yes. Thank you, your Honor.

Your Honor, we believe that this is the unique case in which bifurcation of discovery to focus first, for a limited period of time, on the merits of plaintiff's individual claim is exceptionally warranted.

This case is about Mr. Sdoucos's experience in setting up an automatic payment on his credit card, manually making -- to pay the statement balance. Thereafter, manually making a payment in the statement balance amount after which the automatic payment that he had previously scheduled was

processed, resulting in a credit balance on his credit card.

He claims that the processing of the automatic payment that he had scheduled, after his manual payment, was an unfair and deceptive practice that deprived him of the use of his funds once he had the credit balance on his card.

He only has a claim if, among other things, he was confused and actually lost use of the funds as a result of the deceptive or unfair act by Bank of America.

What actually happened here was that plaintiff wasn't confused at all. He understood that his automatic payment would be processed after he made a manual payment because that's what all of the contractual documents, as well as the information made available to him through his online portal, make clear to him.

He made the manual -- we believe that after a brief period of discovery, it will be beyond question that Mr. Sdoucos made the manual payment on purpose precisely to lose use of the funds in order to file this lawsuit. There was nothing deceptive or misleading by Bank of America here. And in all likelihood, Mr. Sdoucos intended the precise result that he obtained here.

We believe that a limited amount of discovery will bear this out. Discovery that we believe appropriate at this stage, which is clearly severable from the broad class discovery that the plaintiff has already served in this case,

includes discovery into plaintiff's account; his payment elections; how those payment elections were implemented with respect to his account; his intentions; his understanding of his payment elections; and how, if at all, he was impacted by the alleged loss of the use of his funds. And more specifically, whether the loss of the use of his funds was at all the result of the conduct he alleges or whether it was the result of his intentional act prior to making the manual payment to obtain precisely the outcome he's obtained in this case.

By contrast, the discovery that the plaintiff has already served is exceedingly broad and would no doubt result in extensive motion practice related to even the appropriate scope of class discovery, if discovery were to proceed in this case combining merits and class discovery.

And when I say merits and class, I am specifically, as is clear from our papers, specifically requesting a limited period of time to engage in discovery and summary judgment briefing on the merits of plaintiff's individual claim, but -- all aspects of the merits of his claims. We're not asking to put anything off. It is specifically limited to him given the unique circumstances in which this case arose.

THE COURT: All right. Thank you.

Mr. Silva.

MR. SILVA: Your Honor, there is absolutely no

evidence the bank has put forth that Mr. Sdoucos did this intentionally. The only evidence that actually has been before the Court are recordings that Bank of America put before the Court in which Mr. Sdoucos is very clearly distressed by the fact that money was being taken out of his account. There is no other evidence that there was an intentional -- this was an intentional act by him.

Bifurcation is the exception, not the rule. It is -- they have to show three things. They have to show that it increases expediency, which they don't. They are asking for ten months of individual discovery and summary judgment briefing prior to getting to the class discovery. That is not as soon as practicable, and that fails here.

Second is whether or not this is good for the judicial economy or the economy of the parties. Again, it is not. We're talking about two summary judgment motions, two sets of discovery, two sets of experts. And on top of that, we're already seeing in this case there are disputes about what is class discovery and what is --

THE COURT: Two sets of experts? If the Court agrees with the defendant, how is that going to be two sets of experts? Only one set of experts if you get past what the defendant would intend to put before the district court, right?

MR. SILVA: No, the defendant's schedule has experts --

THE COURT: No, I mean --

MR. SILVA: -- in the merits.

THE COURT: If bifurcation occurs, discovery on the plaintiff, is there expert discovery that's going to occur at that time?

MR. SILVA: There would be, your Honor.

THE COURT: What expert would you anticipate?

MR. SILVA: It would likely be an expert as to the reasonable consumer's understanding of the disclosures.

THE COURT: Okay. But that then would also be the same thing you would be offering if you get past that and go into merit determination on the class, right?

MR. SILVA: There would be -- we would also -- we would offer that expert, but there would also be likely experts solely as to class certification.

THE COURT: Okay. So no duplication of experts, just additional experts?

MR. SILVA: Correct.

THE COURT: Got it.

MR. SILVA: Correct.

And the time that goes with that, your Honor, that we would be doing two sets of experts.

THE COURT: Well, you have a claim here that the plaintiff is asserting for statutory damages; is that correct?

MR. SILVA: That is correct, your Honor.

THE COURT: Okay. And what's the value of that?

MR. SILVA: It is between 500 and 4000 dollars per violation.

THE COURT: Okay.

MR. SILVA: Your Honor --

THE COURT: How many violations have you alleged?

MR. SILVA: For the plaintiff himself, just one.

THE COURT: Okay.

MR. SILVA: Yeah. The third point is -- well, in the -- actually sticking with economy, this is guesswork and speculation, right. The cases we cite talk about whether this is guesswork and speculation. That's exactly what the bank is engaging here now. They guess or think that Mr. Sdoucos intentionally did this. They have no evidence of that.

And Abramson is -- is very on point here. In that case, the Court brings up and asks a number of questions and says, we just don't know the answer to these. But still the bank wants us to decide on these. And those are -- you know, each of those questions is also relevant here. It is will the Court move -- I mean, will they find the evidence they are looking for. Will they move quickly. Will they -- will it get granted. All of those things are questions that are happening here. It is the same questions that were asked in that case, and there is no answers.

The cases in which discovery has been bifurcated in

this district are discrete issues that really already have an answer at the time they are being asked. In cases -- for this Court in the -- the -- the Young case, it was about a joint employer that -- where the case law was heavily in favor of the joint employer. And so the Court bifurcated and it allowed joint employer discovery to go first so that case could be taken care of.

In the case out of Southern California, which was the Fitzgerald case, which was about a strip search at the Donovan State Prison, in that case the defendant had submitted to the Court several confidential memorandum about why the reasonable -- it was reasonable search and seizure provisions that would allow that search to go forward, and they were moving on that basis.

Again, here we just don't have that sort of evidence. We have some speculation, but nothing that is very discrete and on point.

THE COURT: Well, didn't the district court indicate that there was some close calls in this with respect to whether the plaintiff has standing or that the plaintiff has suffered an injury in fact?

MR. SILVA: Yes, your Honor, the Court did indicate that there was a close call as to standing. But the Court wanted to say that the deprivation of funds is enough for standing in this district.

And there is no dispute that there was a deprivation of funds here. The bank admits it took the second payment. It admits that even if it could have processed the refund, he would have been without that money for several days. And that they actually did not process the refund until March of this year.

And so the evidence that he was dep- -- that he did not have access to his funds is uncontroverted. It is not going to change in discovery. In fact, it is put before this Court by the defendant. And so that -- that's not going to change.

And the -- you know, similarly, as to the refund, they say we want more evidence about the refund. Well, the tapes -- the recordings of the conversations were before the Court. Those are the conversations that are -- that were talking about the refund. There is no other evidence about that that's going to get before the Court.

And so when we're talking about standing, you know, the factual issues that could possibly change that really have already been before this Court. And it is -- there is not much in discovery that could change those factors.

The other close call was as to the --

THE COURT: Well, it can be tested, right?

MR. SILVA: Of course, it can be tested, yes, your Honor.

THE COURT: Yes.

MR. SILVA: Yeah.

THE COURT: So you know --

MR. SILVA: But if that's the case in every -- in every class action.

THE COURT: Absolutely. Well, we have got a district court who made some comments about the case that is -- and the Court's review of the case would indicate that I share those comments. It is -- go ahead, I'll let you finish.

MR. SILVA: Yes, your Honor.

And then the second time we're talking about a close call is later in the opinion as to -- as to Count Three, which is for -- as to good faith and fair dealing. And again, that is just one of the claims the Court says whether it was -- you know, whether that is a factual issue for another day. But again, that's not the entire claim, right. We have Counts One and Two, so we're only talking about one -- one of the claims there.

And then finally, as to severability, severability is not -- this is not a good case for severability. As we set forth in our opposition, a reasonable consumer's understanding is pertinent to both the individual case and the class case. So things like complaints, things like whether this happened to other people, that's going to be important evidence that's relevant both to the individual case and to the class case.

Even to the data that we have asked for, right, whether -- how often this happened. I don't think it is a stretch to say that most people would prefer not to provide upfront payments to their credit card companies. Pay more than they have to.

And so if it is happening to lots of people, that could be relevant in terms of people's understanding. If Mr. Sdoucos is the only person it happened to, then that would also be relevant.

So knowing that information as to the other putative class members in this case is relevant for both class case and the merits case, and so it is very difficult to separate the two.

And then finally, as to the prejudice, the Seventh District -- or the Seventh Circuit treats the one-way intervention rule different than most circuits in that even if a defendant moves for summary judgment prior to class certification, the plaintiff can't cross move. And if they do, they risk not being able to certify the class without plaintiff.

And so what that would mean here is that even if we end up with a situation where there aren't any disputed facts -- which I think is unlikely based on the Court's opinion -- the plaintiff can't cross move.

THE COURT: You can -- you certainly may not be able

to cross move, but you can certainly defend, right?

MR. SILVA: Absolutely.

THE COURT: And then the case, if you're right about everything you say, then the case goes forward to a class certification -- class issues. Whether there is certification is not for me to make a decision.

But so you are prejudiced by not being able to cross move, is that what you're arguing?

MR. SILVA: Yes, your Honor, because what that means is that we have to --

THE COURT: You eventually would be able to. But right now, at this stage, you're saying you can't. Okay.

MR. SILVA: Yes. They would get two shots at it; we would only get one.

And then finally, as what we put forth, you know, if discovery is burdensome, if there are problems with it, we can sequence in. We have sophisticated counsel on both sides. Very experienced. We haven't -- we haven't done that yet. We have not met and conferred about the specific discovery requests. There are ways for either this Court or the parties to sequence and handle discovery that are short of bifurcation.

And so we would ask that if the Court is inclined to grant some sort of separation, that it not be a formal bifurcation, but that it would be a prioritizing of certain things that plaintiff has just mentioned. We do those things

first -- I'm sorry the defendants just mentioned.

We do those things first. You know, we have time for that. And then we move straight into the class discovery so that we're not having a ten-month delay before we start class discovery.

THE COURT: All right. Thank you.

The Court has reviewed the pleadings and the argument of counsel. I think this is the unusual case where bifurcation would be necessary. Again, the district court has expressed some doubts. The Court has also -- have some -- has some doubts.

But we also have a case here that is not worth a substantial amount of money to the individual plaintiff. We have no idea whether there are additional putative class members that may or may not come into the case at a later date if plaintiff is not appropriate.

I think it is worth the defendants being able to challenge the plaintiff, being able to determine whether or not the Court should expend its judicial resources going forward.

And resources go all kinds of ways. I think you're going to be -- the plaintiff will be hamstrung a bit in not being able to cross move if they are correct about the Seventh Circuit law. But eventually, if you are correct and your claims are going to be upheld, you'll have that chance at summary judgment.

And it is not great to have two summary judgment motions. But given the potential at proportional issues that might affect the defendants having to go forward on a classwide basis at this stage, it is worth, in the Court's view, to limit the resources to focus on the plaintiff, give that a shot, and see if there is enough to move forward.

So I'm going to grant the motion to bifurcate. You have got -- you have asked for a ten-month period; is that correct?

MS. MORRIS: That's correct, your Honor.

THE COURT: Is there any way to narrow that a little bit?

MS. MORRIS: Certainly, your Honor.

THE COURT: Can you do it in, what, seven, eight months?

MS. MORRIS: I believe we can, yes.

THE COURT: All right. Seven months.

Anything else?

MR. SILVA: Your Honor, just so that seven months -- that means the parties should go work out the seven-month schedule there?

THE COURT: Yes.

MR. SILVA: That's okay.

And then is there an order directly as to what constitutes plaintiff's -- plaintiff-centric discovery as

opposed to class discovery?

THE COURT: I'm giving the plaintiff -- the defendant what they have requested in their motion. The motion is granted.

MR. SILVA: What about for the plaintiff's discovery that has been requested?

THE COURT: What your -- your discovery is -- we're focused on the plaintiff. So you have -- you can engage in discovery with respect to the issues that have been raised by the defendant in this aspect of discovery.

Anything else will be for another day. Is that clear?

MR. SILVA: Well, I just want to make sure that I am clear because we are talking about a client -- the plaintiff's substantive claims. So that would mean that things like policies, procedures, as I just raised, whether this has happened to other people is -- is relevant to our client's claims.

THE COURT: They are raising this -- this limited discovery is for the purpose of determining whether or not the plaintiff has standing.

Is there more that that the defendant is requesting?

MS. MORRIS: I -- it is not limited to standing, your Honor. But the merits of his claims, his --

THE COURT: Okay. So then --

MS. MORRIS: -- causation and injury are elements of

his claims.

THE COURT: Do you have any objection to what they have been requesting then --

MS. MORRIS: They have --

THE COURT: -- with respect to the plaintiff?

MS. MORRIS: What they have requested in terms of served discovery so far, very much so. What Mr. Silva has articulated here --

THE COURT: In context.

MS. MORRIS: I believe that we can meet and confer to agree on --

THE COURT: Okay.

MS. MORRIS: -- reasonable discovery.

THE COURT: All right. If you can't, then you'll come in again. You can just -- we'll do a status report request, and you can tell us if there is an agreement. And if there isn't -- if it is not pretty apparent from what you tell me in the status report as to what's going on, then I will request briefing.

All right. Thank you.

MR. SILVA: Thank you, your Honor.

MS. MORRIS: Thank you, your Honor.

(Concluded at 10:18 A.M.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.

*/s/Pamela S. Warren* September 16, 2026
Official Court Reporter - Retired Date
United States District Court
Northern District of Illinois
Eastern Division